Good morning. I'm Jerry Watley and I represent the appellate Mr. Tidwell. It seems to me that this case turns on whether what I think is clearly a violation of clearly established federal law, whether it was prejudicial or not, to allow the tape-recorded statements of Sharon Robinson into evidence. MS. TIDWELL v. CALDERON Can I just say something about that? It was awfully hard to evaluate without having any of the transcripts. MR. TIDWELL v. CALDERON I'm sorry? MS. TIDWELL v. CALDERON It was very hard for us to make any judgment about that because the excerpts have nothing, no transcript from the trial and nothing in which we can really see how this fed into the trial. I mean, it all goes to record, but it's a very peculiar way to litigate an issue which does directly turn on an evaluation of how a certain set of evidence fits into a trial. MR. TIDWELL v. CALDERON Well, ultimately, that's my fault. I'd like to tell you why I made that mistake, if it was a mistake. In another case, about eight months ago, my assistant or my secretary was asking the court clerk of this court whether we should do that or not, whether we should lodge the transcripts or not. And she said, and she was told no, because they've already been lodged. MS. TIDWELL v. CALDERON That's how we're spending time on it.  MR. TIDWELL v. CALDERON So I stand, and I apologize if I did, but that's the reason. I thought those records were already before the court. That's why I cited them in my briefing. MS. TIDWELL v. CALDERON Well, we'll read them, but there's only one copy of them. That's why we have excerpts. MR. TIDWELL v. CALDERON Yes, the difficulty is, though, that because we're all in different locales and we prepare differently, unless you put it in the excerpts of record, we don't get it. You know, there's only one copy, and we either have to ship it around from place to place. So it's, I guess, a practice point, but on a case that does involve this issue, that's where the record is, the transcript is critical. It's good practice to incorporate. And you don't need to apologize.  CHIEF JUSTICE ROBERTS As I understand it, though, the Robinson testimony was abbreviated. I mean, it's not like the Court just willy-nilly admitted this, but, I mean, both sides looked at it. It was redacted, and it ended up being something like a page or less than a page on the transcript. MR. TIDWELL v. CALDERON I think in the total pages of transcript, it would be about eight full pages. CHIEF JUSTICE ROBERTS So why was it pivotal on the two counts that we have left? MR. TIDWELL v. CALDERON Well, because, as the prosecuting attorney told the jury in the State court trial, the prosecuting attorney told the jury that the other witness, the other woman, Ms. Alex, the DA said, I agree that she's a bad witness. I wish I could have found a better witness for that. And the prosecuting attorney also told this jury something to this effect, that you cannot acquit Mr. Tidwell if you believe the statements on that tape of Sharon Robinson. That's how critical it was. You had this one witness, this Ms. Alex, who had a brief relationship with Mr. Tidwell that she related to the jury. Then you had this further brief tape from Ms. Robinson, which went over a history of four or five days with Mr. Tidwell, where Ms. Robinson made it indelibly clear that if she was to be believed, that Mr. Tidwell was a pimp. And so if you take that, which the DA said you had, if you believe that, you can't acquit him. That just shored up whatever weaknesses there were with the counts involving Ms. Alex, and there were certainly very, very weak counts. CHIEF JUSTICE ROBERTS But she also testified that he was a pimp. TIDWELL v. CALDERON Yes, she did. Yes, sir. CHIEF JUSTICE ROBERTS I mean, so there's that testimony. I mean, forget Robinson's testimony for a minute. I'm not here to say that Alex testified that he was a pimp and that she worked for him. TIDWELL v. CALDERON I'm not here to say that the evidence of Alex's accounts was not sufficient as a matter of law. I'm here to say that her credibility had to be bolstered enough for the jury to believe her, or the jury wouldn't. So absent the Robinson statements, I believe that there's a fair inference that the jury would not have found, even the testimony, would not have found based on the testimony of Alex, which was just slightly corroborated by the vice officer. I mean, he saw the two of them together before and after. But there was no direct evidence that Mr. Tidwell had collected any money from her. It was all based on the statements of what Alex said. And as the DA conceded to the jury, Ms. Alex was far from a good witness. So if, and I think it's not a if, but I think that the Ninth Circuit has said that this type of declaration against is a violation of the Confrontation Clause, and then if you go from there and say, well, did that taint, did that prejudice Mr. Tidwell on the Alex counts, I think the fair conclusion is that, yes, it did, because you had a very weak case concerning the Alex counts. And without the Robinson tape. Sotomayor, was there a jury instruction with regard to the Robinson testimony, i.e., that it was only to be considered with regard to Robinson? I'm sorry, ma'am. Was there a jury instruction limiting the use of the Robinson testimony to the Robinson case? Yes, there was. A special made instruction made that was tailored upon a California CalJEC instruction. But it's my recollection that, and I'm hesitating here because I can't recall exactly what that instruction was, and it's not in the excerpt of the record either. It was patterned upon the instruction about, as I recall, and perhaps my opponent can straighten this out on this, it was patterned on the instruction that since she had admitted, Robinson admitted on this tape that she was a prostitute, that, you know, that the jury could take that into account in measuring her credibility. Now, I'm not asking that. I'm asking was there an instruction that they were not to consider her statement with regard to Alex? Was there a limiting instruction? So in other words, with Robinson, you can't consider Robinson's testimony on the other counts, only on the count against her. The closest that the Court came to that was that they were instructed to consider each count separately. Do you want to save some time for rebuttal? Do you want to save the remainder of your time for rebuttal? Do you want to save your time for rebuttal, the remainder? Thank you. May it please the Court. Keith Porthorn, Supervising Deputy Attorney General, for my penalty. Your Honor, I believe this case is easy to resolve on the basis of a harmless error analysis. And on that basis, it's important to note the procedural posture of the case, as the Court already recognizes that two counts involving victim Robinson were reversed in a new trial motion by the trial court and then dismissed by the prosecution. And that's important for respect to understand how the jury would have most likely been viewing the redacted tape statement of Ms. Robinson at the time it was presented to them. They would have been viewing that statement with respect to Alex. Do you think that's the credibility of the other witness, Alex? It would have had perhaps a residual effect. But if you look at the testimony or the redacted statement itself, it only talks, speaks to victim Robinson's conduct. It makes no references to any conduct involving the Alex counts. In fact, it does the defendant. I mean, it inculpates the defendant. But that's just as Alex does. So you've got two women, in effect, two prostitutes testifying. And I realize that Robinson didn't testify, but it's her statement. So you've got two of them saying the same thing. Doesn't that bolster each other? I mean, if you say, I don't know if I believe Alex, but what she says is corroborated by Robinson. It might have had some residual effect, but that's not what would have been the jury's principal focus on that testimony. But could you have, if the Robinson counts had never occurred, the Robinson redaction couldn't have been admitted in a case against, a case only concerning the Alex counts. Right. So the, it's not as if, this is obviously material that shouldn't have been in the trial regarding Alex ordinarily. And so when you say it's residual, what do you mean by that? That it's involving the, it's both, they're both involving pandering and pimping counts, and it's residual in that case. On exactly the same day. Right. But the key is, with respect to the Alex counts, unlike the Robinson counts, you have you do have victim Alex on the stand and available for cross-examination. And then also you have the corroborating testimony of Vice Officer Garza, who was a witness to the transaction. And there are three observations that he makes that I want to emphasize that will demonstrate the lack of prejudice here. Officer Garza testified to three observations with victim Alex and Petitioner involved. And the first one is that he's driving along Sunset and he sees Petitioner driving in a white car with a man in the front seat and victim Alex in the back seat. So he places them together initially as he's driving down Sunset. He leaves the area and returns. And the second observation occurs. The second observation is he approaches the intersection. He sees Petitioner on one corner with that same man he saw in the car before. And he sees victim Alex on another corner. And based on his training and experience as a vice officer, it was his opinion that victim Alex was monitoring street traffic, looking for cars with lone male drivers in it as a customary practice for prostitution. So he's standing on one corner looking at cars as they went by. He slows his – that's the second observation. He slows his car as he approaches the intersection. He makes eye contact with Alex. She nods at him and then motions for him to pull over around the corner. He does so. He pulls over and he notices that she does not immediately walk towards the car. And here's the third observation. He noticed that she hesitates. She looks toward Petitioner who's still on one of the opposite corners. Some sort of exchange which he cannot hear occurs. And then Petitioner steps off the curb and makes a movement towards victim Alex. At that moment, Alex then turns immediately, comes to the car and opens the door, sits halfway into the car and asks Officer Garza if he's looking for a date. He says he is. She tells him it would be $40 for an act of oral copulation. He agrees. There's no dispute that that – No, she was – there's no dispute on that. The only key – And then he – The handshake was one more. I'm sorry, Your Honor. Then there's one more observation. After they make the agreement, he begins to leave. He sees Petitioner one more time. Petitioner walks by the car as they're leaving. He looks into the car, makes eye contact with victim Alex, nods to her. Officer Garza asks, do you know him? She replies, yes, I know him. So three or four, depending on how you look at it. Those are direct observations. There's obviously a relationship there. The inference that it was his – it was Officer Garza's opinion that what was going on there was an act of prostitution. And based on that and his interview of victim Alex concerning what happened in the motel earlier, before the encounter on the street, it was his opinion that there was an act of pandering going on there. So there's corroboration in key and essential respects that doesn't exist with respect to the Robinson counts. So our position would be that actually the evidence is stronger with respect to the Alex counts, not weaker as to the Alex counts. Well, I think the problem, though, is that she apparently wasn't a very good witness, right? And – So you have a fairly poor witness. You have observations, but it's all body language stuff, you know, or signals. But then you have this very powerful testimony that even though it's abbreviated, it puts the story together and the prosecutor in closing emphasizes, how could this be? These two women are separate, have the same story, and they call him by the same nickname. I mean, that's fairly conclusive testimony. I mean, if that's the argument, is that these stories match up. Yes, and the argument is that it's additional corroboration. So it's either you have corroboration from just the vice officer or corroboration from the vice officer and another. Although her story was different with respect to the Robinson counts. And the DA's position with respect to the Alex counts was that she was a weak witness only in the sense that she was a drug addict. She admitted as much at the time. She was out on the street. She was homeless at the time. She was picked up. Apparently she – and he – she cried on the stand, was weak, and it was Officer Garza's testimony that he was – was that the victim, Alex, was actually afraid of Petitioner. But – But, yes, she didn't want to – the judge originally said, we'll have a retrial then. And the – instead of going through that, the trial attorney said, no, no, no, we'll just dismiss the Robinson counts. I mean, rather than face a – I mean, because what's the harm in a retrial? Let's go back and get it right in the retrial. But the trial attorney said, no, no, no, that's all right. We'll dismiss the Alex count, right? I'm sorry, we'll dismiss the Robinson counts. Just let that go. So rather than face a retrial, I mean, Alex must be a pretty poor witness. Do you see what I'm getting? I mean, where the trial attorney says, I don't want to put her on the stand again. I'd rather just dismiss the Robinson counts and just let Alex count stand. I mean, she's a poor witness. Well, she had – well, by that point in the trial, she had already been dismissed, and we know from the difficulty or the due diligence showing that the DA made with respect to the – to the Robinson counts that there was probably a risk that they might not find this person. I mean, those are just trial considerations. But the other problem with the Alex count compared to the Robinson count is that she never actually got any money or gave him any money. So it was just fairly amorphous. But if you knew what happened with Robinson, where she'd been there for several days and she'd collected a lot of money and given him a lot of money and so on, that makes much more credible the notion that this guy was really sort of running her rather than simply being some acquaintance who was somehow, you know, in the vicinity at the time. It just – the case against – regarding her was a one-shot deal that never got – came to fruition, never finished. So it was – without the Robinson history which showed a series of such transactions at exactly the same time, it's quite airy. Well, the receipt of the cash for the transaction was not – is not an element of pandering under California law. No, but it's certainly a powerful element of proof. I mean, not element of proof, but if money had exchanged hand, your case would have been stronger. That's true. But the agreement itself was consummated, and that was a clear for a person to have a specific account. I mean, that he actually got any money out of it, and he never got any money out of this transaction. But that wouldn't bother somebody who was hearing the two – that he was actually in the business, so to speak. Otherwise, it just seems – Well, Victim Alex did testify that she witnessed in the motel room an exchange between she was – Robinson was working for him, a term that Alex understood from her experience as a prostitute, to mean prostitution. But how would that go to show that – well, it's – we can quibble about it. It's a closer case than one would think, and the real question is how powerful the testimony is. I would agree with that, and the key, in my view, Your Honor, is the uncontradicted corroboration from Vice Officer Garza and the witness of the exchanges that went on between Victim Alex and Petitia. Thank you, counsel. Thank you. Mr. Bonner. Riding down this morning, I was reminded about the recent death of the late great Johnny Cockman, who said, if it doesn't fit, you must acquit. And as I sat here this morning, waiting for my turn, I wrote this statement out, which is a paraphrase of what the district attorney told this jury. That it, in this statement, is the tape of Robinson. And she told the jury, if you believe the statement on it, you cannot acquit. You must reverse this judgment. Thank you very much. Thank you, counsel. The case, as heard, will be submitted and will be in recess for the morning. All rise.
judges: Thomas, Berzon, Mahan